# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-4363

OLD TOWN NEIGHBORHOOD ASSOCIATION INCORPORATED
and HISTORIC LANDMARKS FOUNDATION OF INDIANA, INC.,

*Plaintiffs-Appellees*,

*v.*

ALLAN KAUFFMAN, Mayor of Goshen, Indiana,

*Defendant-Appellant*,

and

MARY E. PETERS, Federal Highway Administrator, *et al.*,

*Defendants*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:02-cv-01505-DFH—**David F. Hamilton**, *Judge*.

ARGUED MAY 20, 2003—DECIDED JUNE 19, 2003

Before COFFEY, EASTERBROOK, and DIANE P. WOOD, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Municipal officials want to widen Third Street in Goshen, Indiana. Groups believing that this project would damage or destroy buildings of historic or architectural significance filed this suit un-

der three federal statutes: Sections 106 and 110 of the National Historic Preservation Act (NHPA), 16 U.S.C. §§ 470f and 470h-2(k); Section 4(f) of the Department of Transportation Act, 49 U.S.C. §303(c); and §102 of the National Environmental Policy Act (NEPA), 42 U.S.C. §4332(2)(C). These laws specify steps that must precede certain federal decisions. Goshen insists that they have nothing to do with local projects. The district court did not dispute this proposition but found, after an evidentiary hearing, that federal participation was in the offing. The judge summarized his conclusions this way:

> Plaintiffs have shown a substantial likelihood . . . that the Third Street project has been improperly "segmented" from a major federal undertaking—improvement of U.S. Highway 33 through downtown Goshen—that is subject to environmental and historic impact review. The evidence indicates that the City of Goshen, the Indiana Department of Transportation, and the Federal Highway Administration have reached an understanding that the City of Goshen should carry out its Third Street project without environmental and historic impact review, and then carry out a "swap" of Third Street and Main Street so that U.S. 33 and State Road 15 will be shifted to use the widened and improved Third Street. The defendants discussed such a scheme, never definitively rejected it, and have acted in a way that is consistent with the scheme. In addition, the scheme makes a great deal of sense, at least from the standpoint of managing traffic through the city. It also offers the apparent advantage of sparing defendants from having to go through formal review of environmental and historic impacts of their desired course of action.

2002 U.S. Dist. LEXIS 23510 at *3-4 (S.D. Ind. Nov. 15, 2002). The judge entered a preliminary injunction forbid-

ding local, state, and federal officials from taking any further action to widen Third Street until they have complied with all three statutes. Goshen has appealed; Indiana and federal officials have not, nor have they filed briefs informing us about their positions with respect to the district court's reasoning and relief. Yet unless the Federal Highway Administration accepts the district court's view and treats Third Street as a federal undertaking, no findings will be made and no environmental analysis done; and, if not, Goshen will be perpetually banned from using local funds to carry out a local project.

For purposes of Goshen's appeal, we take as established all of the district court's factual findings: that Goshen would like Route 33 to go through Third Street eventually; that local, state, and federal officials have discussed this possibility favorably; and that neither the state nor the federal government has definitively rejected the option. But it has not been formally proposed to or discussed with (let alone approved by) the senior federal officials who would be responsible for making the decision. No federal funds have been allocated. No concrete federal proposals have been made; no reports or recommendations on any proposals have been prepared. This is fatal to the plaintiffs' claim under NEPA, which provides that "all agencies of the Federal Government shall— . . . (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on" five categories of information. 42 U.S.C. §4332(2)(C). Because no federal official has prepared a "recommendation or report" on any proposal concerning Route 33, the time for an environmental impact statement has not arrived. See *Kleppe v. Sierra Club*, 427 U.S. 390 (1976). Once a federal proposal has been made and an environmental assessment of some kind is required, a court may need to determine which subjects

it must cover; this is the "segmentation" question, see *Swain v. Brinegar*, 542 F.2d 364 (7th Cir. 1976) (en banc), to which the district court devoted much attention. But that lies in the future; the Supreme Court held in *Kleppe* that, until a formal proposal is made, no environmental study of any particular scope is needed. And when the federal agency does make a proposal, decisions about its scope must be reviewed deferentially. See *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 375-78 (1989); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989). Courts may not make independent decisions, as the district judge did here. Until there is a concrete proposal, it is impossible to determine whether the federal agency has acted arbitrarily or capriciously in choosing the scope of the project and environmental study.

The other statutes on which plaintiffs rely depend on federal licensing, ownership, or funding. Section 106 of NHPA says that

> The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register.

16 U.S.C. §470f. This statute sets conditions on the expenditure of federal funds and the issuance of federal licenses. As Goshen has not sought any federal support for the renovation of Third Street, no federal dollars have been obligated, and no federal license is required, it is unnecessary

to satisfy these conditions. For its part, §110 imposes duties on federal agencies with respect to "historic properties which are owned or controlled by such agency." 16 U.S.C. §470h-2(a)(1). The district court did not find that the Federal Highway Administration owns or controls Third Street or any of the adjoining properties, so this law drops out. As for §4(f) of the Department of Transportation Act, 49 U.S.C. §303(c), this statute tells us that:

> The Secretary may approve a transportation program or project (other than any project for a park road or parkway under section 204 of title 23) requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance, or land of an historic site of national, State, or local significance (as determined by the Federal, State, or local officials having jurisdiction over the park, area, refuge, or site) only if—
>
>> (1) there is no prudent and feasible alternative to using that land; and
>>
>> (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.

No one has asked the Secretary of Transportation to approve any program or project related to Third Street in Goshen, so there was no need for the Secretary to consider whether any prerequisites for approval have been satisfied. Entities that proceed on their own dime need not meet conditions for federal assistance or approval.

What concerned the district judge is the possibility that Goshen will seek reimbursement after the fact—either in cash or in money's worth, such as a swap of Third

Street for land now owned by the federal government. Once the historic structures have been razed, the Secretary could certify that the federal approval or expenditure does not affect any historic site, for none would be standing. That two-step would subvert the federal laws. It is not at all clear that decomposing the transaction into "local" demolition followed by federal reimbursement could succeed. Does any statute authorize the Secretary or the Administrator to reimburse local government for the cost of a project after its completion? If there is such authority, however, a court may combine the stages, after the fashion of the step-transaction doctrine in tax law, into a sequence. If there really is an agreement that Goshen will prepay the costs of widening Third Street, following which the Secretary will approve reimbursement, then the federal government effectively is borrowing the construction costs from Goshen. Promising to repay borrowed money is just a particular way to obligate federal funds, no less subject to §106 of NHPA than any other means to write a check. But if, as Goshen insists, there will *never* be federal reimbursement, there is no series of stages to be compressed into one transaction and no problem under these federal statutes.

This means that the district court afforded plaintiffs the wrong relief. Instead of enjoining all construction work on Third Street until the federal government has jumped through the hoops needed to fund a federal project, the district court should have enjoined Goshen from seeking or accepting federal reimbursement. In other words, because these federal laws do not apply to local projects funded by local tax revenues, and Goshen insists that the widening of Third Street is a genuinely local project, it satisfies all of the federal statutes just to hold the City to its representation. If Goshen files with the court a formal undertaking that will be embodied in an injunction (and thus enforceable through the contempt power) never to seek or accept any federal reimbursement, direct or

indirect, for the cost of widening Third Street, the City should be allowed to proceed with the work. Before accepting the undertaking, the district court should ensure that it would not disrupt any federal plans that take precedence under the Supremacy Clause. But unless the state or federal government finds in the City's undertaking a transgression of some other federal law, regulation, or undertaking, the City is entitled to opt out of federal reimbursement and the conditions attached to federal money. If the City balks at making an ironclad commitment, however, and if as a result federal reimbursement remains in prospect, then the City must keep the work on hold until the conditions of federal support have been satisfied.

The preliminary injunction is vacated, and the case is remanded for further proceedings consistent with this opinion.

A true Copy:

       Teste:

                          _____

                          *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*